UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NICHOLAS SERVICES, LLC,

    Plaintiff,

v.                          Case No.:  2:22-cv-673-JLB-KCD

NAPLES JET CENTER
HOLDINGS, LLC,

    Defendant.
_____/

## ORDER

Before the Court is Defendant Naples Jet Center Holdings, LLC's Motion to Compel. (Doc. 49.)[1] Plaintiff Nicholas Services, LLC responded (Doc. 57), making this matter ripe. For the reasons below, Naples Jet Center's motion is granted in part and denied in part.

### I. Background

Nicholas Services, doing business as Nicholas Air, offers private jet services. While grounded at the Naples International Airport, one of its aircraft was allegedly struck by a tug[2] owned by Naples Jet Center. The collision damaged the wing and transferred blue paint to the aircraft. Naples Jet

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

[2] Naples Jet explains that a tug is a special purpose vehicle typically used to maneuver aircraft to and from parking positions at an airport. (Doc. 46 at n.2.)

Case 2:22-cv-00673-JLB-KCD   Document 60   Filed 05/09/23   Page 2 of 17 PageID 446

Center's employees then allegedly tried to conceal the damage by rubbing the paint off with shop rags, but the rags left lint and fabric particles embedded in the wing. The aircraft was grounded because of the damage. This lawsuit followed several years later.

The operative complaint alleges four claims against Naples Jet Center: negligence, gross negligence, trespass to chattel, and respondeat superior. (Doc. 42.) Aside from the repair charges, Nicholas Air is seeking costs to substitute another aircraft for the scheduled flights that day and lost revenue for the five days the aircraft was out of service. (*Id.* at 2-3.)

The pending motion to compel is directed at Nicholas Air's damages, so additional background on this topic is helpful. As part of its Rule 26 disclosures, Nicholas Air provided an affidavit from its chief financial officer (CFO) that identifies three damage categories:

   i. Scheduling, repositioning, and substitute aircraft costs . . . total[ing] $36,813.00;

   ii. [A]t least $83,700.00 in [lost] revenue due to the [damaged aircraft] consequently being out of service for five (5) days;

   iii. Costs to repair the [damaged aircraft] total $65,328.81. This includes parts, labor, courier services, and administrative expenses that otherwise would not have been incurred.

2

(Doc. 49-1.) Attached to the affidavit are repair records that cover the third category. But the other two categories—substitute aircraft costs and lost revenue—have no supporting documentation. (*Id.*)

Once discovery opened, Naples Jet Center served interrogatories and requests for production. This discovery was primarily tailored to obtain documents about the substitute aircraft costs and lost revenue mentioned in Nicholas Air's affidavit. (*See* Doc. 49-3, Doc. 49-4.) According to Naples Jet Center, Nicholas Air's CFO necessarily "reviewed and relied upon documents, electronically stored information, or other evidentiary materials . . . to state, under oath, that [it] incurred" the costs represented. (Doc. 49 at 8.)

Nicholas Air timely responded, but it objected to nearly every request. (*See* Doc. 49-3, Doc. 49-4.) Take, for example, Document Request 11, which asked for "[a]ll documents and records which Karen Thompson [sic] reviewed, relied upon, and/or otherwise support her statement . . . that [s]cheduling, repositioning, and substitute aircraft costs were incurred by Nicholas Air . . . and these costs total $36,813.00." Here is how Nicholas Air answered:

> Nicholas Air objects to this Request as vague and ambiguous as to its reference to Karen "Thompson." If Defendant is referring to Karen Thornton, Nicholas Air objects to this Request as the documents and records it seeks are confidential and proprietary business information and/or are protected by the attorney-client privilege and/or work product doctrine. Subject to, and without waiving this objection, scheduling changes and repositioning costs incurred

3

> on December 9, 2020, were $7,635.60, and a substitute aircraft was required to operate flights, which cost $29,177.40 more than operating the subject substitute aircraft. Therefore, the operational impact totals $36,813.00. Discovery is ongoing, and Nicholas Air reserves the right to supplement this response in accordance with the Federal Rules of Civil Procedure, applicable local rules, and/or the scheduling order entered in this action.

(Doc. 49-3 at 4.) No documents were produced in response to this request. (*See* Doc. 49 at 9.) Meaning Nicholas Air withheld everything responsive as "confidential and proprietary business information and/or . . . protected by the attorney-client privilege and/or work product doctrine." (*See* Doc. 49 at 9-10.) The objection above is repeated (with slight modification) throughout Nicholas Air's discovery responses.

Naples Jet Center now moves the Court to overrule Nicholas Air's objections and answer several discovery requests aimed at its claims for substitute aircraft costs and lost revenue. (Doc. 49.) Specifically, Naples Jet Center challenges the Rule 26 disclosures, document requests 11, 13, 15, and 16, and interrogatories 2, 3, 5, 9, 10 and 18. (*Id.* at 8-20.)

## II. Standard of Review

The discovery process is designed to fully inform the parties of the relevant facts involved in their case. Federal Rule of Civil Procedure 26 provides the scope of permissible discovery:

4

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

As this language suggests, discovery is designed to be broad. The information must be relevant to a claim or defense, but it "need not be admissible in evidence." *Id.* "The Federal Rules of Civil Procedure strongly favor full discovery whenever possible." *Grayson v. No Labels, Inc.*, No. 6:20-CV-1824-PGB-LRH, 2021 WL 8199894, at *3 (M.D. Fla. Nov. 17, 2021).

The party moving to compel discovery bears the initial burden of proving it is relevant. *Douglas v. Kohl's Dept. Stores, Inc.*, No. 6:15-CV-1185-Orl-22TBS, 2016 WL 1637277, at *2 (M.D. Fla. Apr. 25, 2016). The responding party must then demonstrate how the discovery is improper, unreasonable, or burdensome. *Aileron Inv. Mgmt., LLC v. Am. Lending Ctr., LLC*, No. 8:21-CV-146-MSS-AAS, 2021 WL 5961144, at *1 (M.D. Fla. Dec. 16, 2021). "When opposing the motion, a party must show specifically how the requested discovery is" objectionable. *Nolan v. Integrated Real Est. Processing, LP*, No. 3:08-CV-642-J-34HTS, 2009 WL 635799, at *1 (M.D. Fla. Mar. 11, 2009).

### III. Analysis

The scope of this dispute has apparently narrowed. Nicholas Air reports that it provided updated discovery answers, "which moot many of the issues raised in the motion to compel." (Doc. 57 at 1.) Given this representation, the Court will only discuss the discovery requests still opposed in Nicholas Air's response. Naples Jet Center can file a new motion if needed to address the sufficiency of any updated discovery responses, or if Nicholas Air's account is incorrect.[3]

**A. Rule 26 Disclosures**

We start with the Rule 26 disclosures. According to Naples Jet Center, Nicholas Air has not provided "a single document, record, or other evidentiary material of any kind to support" the substitute aircraft costs and lost revenue damages contained the CFO affidavit. (Doc. 49 at 9.) And this type of disclosure is "required under Rule 26(a)(1)." (*Id.*)

Nicholas Air denies it is required to produce documents "relating to damages claimed." (Doc. 57 at 2.) Rather, Rule 26 "merely requires a party to provide a copy or description of the documents a party *may use to support its claims and defenses*." (*Id.* (emphasis added).) And since Nicholas Air "does not

---

[3] Naples Jet Center has moved to file a reply brief that addresses, among other things, Nicholas Air's supplemental discovery responses. (Doc. 58.) The Court prefers that this subject be argued in a new motion, if necessary. That will allow for full briefing of the issues, and the Court's ruling here may also help narrow any outstanding disagreements.

intend to offer any [of the] materials that may have been reviewed by [the CFO] to support its claims and defenses, it is under no obligation to produce [them] in connection with its initial disclosures." (*Id.*)

Nicholas Air misreads Rule 26. Initial disclosures are not limited to materials a party intends use to support its case. When damages are claimed, as here, Rule 26 requires "a computation of each category" and the disclosure of "documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii). Thus, pursuant to Rule 26, a "defendant is entitled to a specific computation of plaintiff's damages, and is entitled to have made available for inspection and copying the documents and other evidentiary material on which such computation is based." *Shock v. Aerospace Integration Corp.*, No. 3:08-CV-304/RV/EMT, 2009 WL 595923, at *4 (N.D. Fla. Mar. 6, 2009).

This section of Rule 26 is the functional equivalent of a standing request for production. "A party claiming damages or other monetary relief must, in addition to disclosing the calculation of such damages, make available the supporting documents for inspection and copying as if a request for such material had been made under Rule 34." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006). And important now, there is no requirement that these materials be provided only if they will be used.

7

Nicholas Air has seemingly complied with the first requirement of Rule 26(a)(1)(A)(iii)—it has disclosed an affidavit outlining the various categories of damages sought. But as noted, that is not enough. Nicholas Air must also make available the "evidentiary material on which [those categories are] based." Rule 26(a)(1)(A)(iii).

One last item. Nicholas Air says the information reviewed by its CFO to prepare the affidavit is "confidential and proprietary." (Doc. 57 at 2.) But it offers nothing beyond this boilerplate language to support an objection on these grounds. "That is improper." *Le v. Asset Campus USA LLC*, No. 4:20CV447-MW/MJF, 2021 WL 4144776, at *2 (N.D. Fla. Apr. 22, 2021). "[I]t is not proper to refuse to produce discoverable information based on a general assertion that the information is confidential and proprietary." *Gamecraft, LLC v. Vector Putting, LLC*, No. 6:12-CV-51-ORL-28KRS, 2012 WL 12899018, at *3 (M.D. Fla. June 22, 2012). The objecting party must provide enough information to assess whether the claim is truly merited.

Because Nicholas Air has provided nothing to assess what the CFO reviewed, let alone whether it is proprietary, the Court will order disclosure as required under Rule 26(a)(1)(A)(iii). Naples Jet Center's motion to compel is thus granted as it pertains to Rule 26.

**B. Document Requests 11, 13, 15 and 16**

Nicholas Air has withdrawn "all objections except those relating to confidentiality and has produced all non-confidential materials" in response to these requests. (Doc. 57 at 3.) Before jumping into the confidentiality issue, the Court offers a few general observations about Nicholas Air's original discovery responses for sake of clarity moving forward.

In the Eleventh Circuit, objections should be "plain enough and specific enough so that the court can understand in what way the" discovery request is improper. *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985). Courts in the Eleventh Circuit have also cautioned parties that boilerplate objections are borderline frivolous. *Steed v. EverHome Mortg. Co.*, 308 F. App'x 364, 371 (11th Cir. 2009). This means that Nicholas Air cannot simply assert that discovery is improper. It must instead show how each specific request is unsuitable under Rule 26. A similar principle governs objections based on privilege. Generalized objections asserting confidentiality, attorney-client privilege or work-product doctrine do not comply with either the spirit or letter of the Federal Rules.

Nicholas Air's general objections are of the boilerplate, one-size-fits-all variety that this court has rejected. Nicholas Air fails to address each request specifically. Instead, it repeats a generic objection that Naples Jet Center seeks "confidential and proprietary business information." (Doc. 49-3 at 4.) Without

9

more about what confidential information is sought under each request, the objection is meaningless. *See Miccosukee Tribe of Indians of Fla. v. Cypress*, No. 12-22439-CIV, 2013 WL 10740706, at *1 (S.D. Fla. June 28, 2013) ("When a party responds to a discovery request with objections, it must do so in a [cl]ear and unambiguous manner, and must include a supporting explanation or justification for the objections.").

Nicholas Air also may have run afoul of Federal Rule of Procedure 26(b)(5), which provides that "[w]hen a party withholds information otherwise discoverable by claiming the information is privileged . . . the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications or tangible things not produced or disclosed[.]" Rather than explaining the nature of the privileged documents or why the information sought is entitled to protection, Nicholas Air merely copies a boilerplate privilege objection throughout its discovery responses. (*See* Doc. 49-3.) This "boilerplate, one size fits all variety has [likewise] been rejected" in the privilege context. *Mauro v. Alldredge*, No. 6:12-CV-1333-ORL-22, 2013 WL 3866531, at *3 (M.D. Fla. July 25, 2013); *see also Gonzalez v. ETourandTravel, Inc.*, No. 6:13-CV-827-ORL-36, 2014 WL 1250034, at *4 (M.D. Fla. Mar. 26, 2014). Accordingly, Nicholas Air's privilege objections would be improper if, in fact, it withheld responsive documents or information. And if nothing was withheld, a clarifying statement to that effect is necessary.

As mentioned, Nicholas Air is now relying on its confidentiality objection. So the Court will limit is discussion to that question.

"[T]here is no absolute privilege for trade secrets and similar confidential information." *Fed. Open Mkt. Comm. of Fed. Rsrv. Sys. v. Merrill*, 443 U.S. 340, 362 (1979). Rather, courts weigh the claim to privacy against the need for disclosure, and commonly enter a protective order if needed. *See Martin v. Glob. Mktg. Rsch. Servs., Inc.*, No. 6:14-CV-1290-ORL31KRS, 2015 WL 6083537, at *6 (M.D. Fla. Oct. 15, 2015). "The party resisting discovery must first establish that the information sought is [otherwise confidential] and then demonstrate its disclosure might be harmful." *Classic Soft Trim, Inc. v. Albert*, No. 618CV1237ORL78GJK, 2020 WL 6731037, at *7 (M.D. Fla. Mar. 12, 2020).

Nicholas Air makes no attempt to demonstrate that the information sought is truly confidential, what steps it takes to preserve the confidentiality of the information, or how disclosure of the information might be harmful. Instead, Nicholas Air recites a few general topics that would fall under the requests ("customer information, flight information, financial reports") and declares they relate "to the unique way [it] operates its business." (Doc. 57 at 3-4.) The Court declines to shield information that is plainly relevant under such a perfunctory justification. *See, e.g.*, *Classic Soft Trim*, 2020 WL 6731037, at *7; *Gonzalez v. ETourandTravel, Inc.*, No. 6:13-CV-827-ORL-36, 2014 WL 1250034, at *4 (M.D. Fla. Mar. 26, 2014).

11

To be sure, some of the information sought by Naples Jet Center may include confidential material. But "[m]any cases between competitors have been litigated and case law is replete with ways in which truly confidential and proprietary information can be produced in discovery." *Gamecraft, LLC v. Vector Putting, LLC*, No. 6:12-CV-51-ORL-28KRS, 2012 WL 12899018, at *3 (M.D. Fla. June 22, 2012). "The normal way to protect a person's privacy is to enter a protective order limiting disclosure of the sensitive information." *Bender v. Tropic Star Seafood, Inc.*, No. 4:07CV438-SPM/WCS, 2008 WL 2824450, at *2 (N.D. Fla. July 21, 2008); *see also Karmagreen, LLC v. MRSS Inc.*, No. 1:21-CV-00674-WMR, 2022 WL 3336062, at *2 (N.D. Ga. Mar. 11, 2022). Nicholas Air has not sought a protective order or anything of the sort. Accordingly, the Court overrules Nicholas Air's objections and directs it to respond to the above discovery requests.

### C. Interrogatory 2 and Document Request 10

These discovery requests seek insurance information. The interrogatory asks Nicholas Air to identify any insurance policies that "cover or may cover" the damages claimed. (Doc. 49-4.) The document request likewise seeks a copy of "[a]ny policy of insurance which you contend cover or may cover you for any of the compensatory damages." (Doc. 49-3.)

Nicholas Air does not deny it has insurance. Instead, it argues these questions are irrelevant because it "has not sought compensation from any

12

party (including insurers)." (Doc. 57 at 5.) Thus, "the identities of other insurers who Nicholas Air may believe to be responsible for the damages at issue in this suit is irrelevant." (*Id.*)

The Court is not convinced. Although Nicholas Air has decided against pursuing an insurance claim, that could change. Insurance information may also be explored to discover if Nicholas Air has submitted other claims that overlap (or explain) the damages sought here. At bottom, the insurance information Naples Jet Center seeks is not so irrelevant that it falls outside the bounds of Rule 26. Accordingly, the Court overrules Nicholas Air's objections and directs it to respond to this discovery.

### D. Interrogatory 10

As mentioned, Nicholas Air is seeking lost revenue for the five days the aircraft was out of service. Interrogatory 10 asks Nicholas Air to identify each aircraft in its fleet during this period. As best the Court can tell, Naples Jet Center is exploring a mitigation argument—*i.e.*, "there may have been available aircraft to operate all booked and scheduled flights during the time that the subject Aircraft was not in service, which did or could have mitigate[d] [the] claim for Lost Revenue damages." (Doc. 49 at 18.)

Nicholas Air first objects on relevance grounds. It argues the lost revenue "was based on utilization of the same airframe (regardless of what actual airframe was used to supplement)." (Doc. 57 at 6-7.) Thus, what was happening

13

with the rest of the fleet is "irrelevant, unnecessary, and over-reaching." (*Id.* at 7.)

The Court again disagrees. The information sought is plainly discoverable. Naples Jet Center can explore whether Nicholas Air efficiently used its existing resources to mitigate any damages. Naples Jet Center need not accept Nicholas Air's contention that it has "been reasonable in its claim for revenue lost." (Doc. 57 at 6.)

Although not entirely clear, Nicholas Air also seems to assert a confidentiality objection. (Doc. 57 at 7 ("Moreover, it is common sense that Nicholas Air lost revenue due to the Aircraft being out of service, and the specific amount of revenue lost was calculated using highly confidential client billing information, which is protected from disclosure."). This argument fails for the same reason as above—Nicholas Air must do more than proclaim that confidential information is sought. Yet that is all the record presents here.

Finally, it is far from apparent that Interrogatory 10 seeks proprietary information. Naples Jet Center is not requesting pricing or customer information. The interrogatory simply asks what aircraft were in Nicolas Air's fleet during the five-day period at issue. For these reasons, the Court overrules Nicholas Air's objections and directs it to respond to Interrogatory 10.

### E. Attorney's Fees

That leaves the issue of sanctions. Naples Jet Center asks the Court to award "reasonable expenses incurred in making this motion, including attorneys' fees." (Doc. 49 at 21.)

If a motion to compel "is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must . . . require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5). This sanctions provision in Rule 37 is self-executing. The court *must* award expenses if the disclosures or requested discovery are provided in reaction to a motion to compel. *See KePRO Acquisitions, Inc. v. Analytics Holdings, LLC*, No. 3:19-CV-00842-SRW, 2021 WL 6883475, at *2 (M.D. Ala. Mar. 22, 2021).

There is no doubt Rule 37(a)(5) applies here. Naples Jet Center admittedly updated its discovery answers following the motion to compel. (Doc. 57 at 1 ("Since the filing of the motion to compel, Nicholas Air, as previously promised, served Supplemental and Amended Responses[.]"). Thus, "an award of attorney's fees and expenses is mandated." *Bayer Healthcare Pharms., Inc. v. River's Edge Pharms., LLC*, No. 1:11-CV-1634-RLV-ECS, 2014 WL 12789352, at *6 (N.D. Ga. Mar. 21, 2014).

Rule 37 does have a safe-harbor provision. The court need not order sanctions if: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). The burden of avoiding sanctions rests on the disobedient party. *See, e.g.*, *Eichmuller v. Sarasota Cnty. Gov't*, No. 8:20-CV-47-T-33SPF, 2020 WL 10318567, at *1 (M.D. Fla. July 20, 2020); *Arugu v. City of Plantation*, No. 09-61618-CIV, 2010 WL 11520180, at *2 (S.D. Fla. May 4, 2010).

Nicholas Air has failed to carry its burden. Indeed, it offers no opposition to Naples Jet Center's request for costs and fees. That ends the matter. *See Eichmuller*, 2020 WL 10318567, at *2 (awarding attorney fees where the "[d]efendant . . . failed to provide any meaningful opposition to [the] request for sanctions"); *KePRO Acquisitions, Inc.*, 2021 WL 6883475, at *3 (levying attorney fees where the opposing party "fail[ed] to present evidence supporting any of the three exceptions listed in Rule 37(a)(5)(A)").

Accordingly, it is now **ORDERED**:

1. Naples Jet Center's Motion to Compel (Doc. 49) is **GRANTED IN PART AND DENIED IN PART** as outlined above.

2. Naples Jet Center's Motion for Leave to File a Reply (Doc. 58) is **DENIED**.

3. Within fourteen days of this order, the parties must meet and confer about the amount of attorney's fees and expenses sought by Naples Jet Center.

4. If the parties cannot reach an agreement, Naples Jet Center must submit a motion, which includes necessary supporting documents, detailing its reasonable expenses and fees.

**ENTERED** in Fort Myers, Florida on May 9, 2023.

Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record